## Bridgewater Borough v. Beaver Valley Traction Company.

*Public Service Commission—Jurisdiction—Street railways—Service.*

1. The Public Service Commission has exclusive jurisdiciton over all questions between boroughs and street railways relating solely to service.

2. A bill in equity by a borough to restrain a street railway company from discontinuing its service on certain streets is properly dismissed for want of jurisdiction, although the ordinance granting permission to the company to occupy the street contains a stipulation for the service, if the Public Service Commission has granted permission to discontinue it.

3. A borough ordinance granting a street railway corporation permission to operate cars over its streets upon certain conditions is a contract which the railway corporation cannot disregard of its own motion, but must be complied with, no matter how onerous, unless stricken down by some proper legislative exercise of the police power.

Bill for injunction. C. P. Beaver Co., Dec. T., 1920, No. 4, in Equity.

*Thompson Bradshaw* and *Hice, Morrison, May & Bradshaw,* for plaintiff.

*D. A. Nelson* and *E. P. Griffiths,* for defendant.

BALDWIN, P. J., April 22, 1924.—From the bill, answer, supplemental bill and supplemental answer we find the following

### Facts.

1. The plaintiff borough is a municipal corporation in the County of Beaver and State of Pennsylvania.

2. The defendant, Beaver Valley Traction Company, is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, operating a number of street railway companies within the County of Beaver and State of Pennsylvania.

3. Prior to May 31, 1901, Beaver Valley Traction Company was operating a street railway within said Borough of Bridgewater along Water Street, in said borough, thence along Bridge Street westwardly into the Borough of Beaver.

4. At that time the said Beaver Valley Traction Company had a right in said borough to operate a street-car line only upon said Water Street and upon a part of Bridge Street, and requested the Borough of Bridgewater for authority to extend its tracks upon Bridge Street eastwardly to the Big Beaver Bridge and there connect the said tracks with the double tracks which the said Beaver Valley Traction Company had at time recently placed upon said bridge, and likewise for authority to connect its said tracks on Water Street and Bridge Street.

5. Thereupon the said Borough of Bridgewater enacted an ordinance, being ordinance No. 83 on the records of said borough, a true and correct copy of which is marked Exhibit "A," attached to the plaintiff's bill, which said ordinance was duly accepted by the defendant.

6. The said ordinance granted to the Beaver Valley Traction Company certain rights upon Water Street and Bridge Street, in the Borough of Bridgewater, which said company did not have prior to the passage of said ordinance, and without the enactment of said ordinance said traction company would have had no right to occupy Water Street and Bridge Street as they were permitted to do by the terms of said ordinance.

7. After the passage of said ordinance, the defendant company extended its tracks eastwardly on Bridge Street, as it was authorized to do in said ordinance, and connected up said tracks with its tracks on Water Street.

8. Under the terms and conditions of said ordinance, said Beaver Valley Traction Company undertook and agreed to give to the Borough of Bridgewater a twenty-minute service on Water Street and a ten-minute service on Bridge Street, and this fixed service was the only consideration which the said borough received for said grant by said Borough of Bridgewater.

9. From the time of the passage of said ordinance to Sept. 19, 1920, said Beaver Valley Traction Company kept and maintained the service on said Water Street and Bridge Street, which was stipulated in said ordinance, during the period when it operated cars at all over said streets.

10. On Sept. 19, 1920, said Beaver Valley Traction Company discontinued the twenty-minute service on Water Street and, after request by the Borough of Bridgewater, refused to re-establish the same and to maintain the twenty-minute service on Water Street as stipulated in said ordinance.

11. From and after Sept. 19, 1920, said Beaver Valley Traction Company gave service upon said Water Street only from 6.05 A. M. to 8.45 A. M. and from 4.05 P. M. to 8.45 P. M. of each day.

12. On Dec. 6, 1922, the defendant company filed an application to the Public Service Commission of Pennsylvania, at No. A-7562 of 1922, for permission to discontinue all service on its said Water Street line, and the plaintiff borough filed a protest in the above recited proceeding before said Public Service Commission, and, after hearing and argument thereon, said commission, on June 25, 1923, made an order whereby permission was granted to the defendant company to discontinue service on its said Water Street line; a true and correct copy of said order of the Public Service Commission, together with a copy of the opinion delivered in connection therewith, is attached to and made part of defendant's supplemental answer, and marked Exhibit "A."

13. The said Borough of Bridgewater took no appeal from said decision of the Public Service Commission.

14. On Sept. 1, 1923, said Beaver Valley Traction Company, after notice to said Borough of Bridgewater of its intention so to do, discontinued all service on its said Water Street line, and has not since re-established or maintained any service on said line whatsoever.

### Conclusions of law.

1. The question of the obligation of said Beaver Valley Traction Company to maintain a service on said Water Street is a question directly and purely of service.

2. The Public Service Commission of Pennsylvania having made an order granting the defendant company permission to discontinue service on its said Water Street line, such discontinuance of service is not in breach of the conditions of the franchise ordinance in question.

3. The bill of complaint should be dismissed.

4. The costs should be paid by defendant.

### Discussion.

The bill in this case was filed on Oct. 26, 1920. Defendant interposed a demurrer, which was overruled on March 2, 1921. Thereafter the defendant filed an answer and the cause came on in regular course for hearing. A partial hearing was had, following which we were requested to withhold decision of the case, in view of a proposed application to the Public Service Commission of Pennsylvania on the part of the defendant for permission to discontinue all service on Water Street. This application was duly made; the

Bridgewater Borough *v.* Beaver Valley Traction Company.

Borough of Bridgewater filed a protest, and, after hearing, the Public Service Commission granted the application, as hereinbefore set out in finding of fact No. 12. Plaintiff then supplemented its bill of complaint by averring discontinuance of all service on Water Street on Sept. 1, 1923, and defendant filed a supplemental answer admitting such discontinuance of service and pleading the proceedings before and the order of the Public Service Commission.

The authority and jurisdiction of the Public Service Commission to permit defendant to discontinue all service on Water Street cannot be doubted, in view of the decisions in Peoples Natural Gas Co. *v.* Public Service Commission, 79 Pa. Superior Ct. 560; Carlisle Borough *v.* Public Service Commission, 81 Pa. Superior Ct. 475, and Norristown *v.* Reading T. & L. Co., 277 Pa. 459. As the Supreme Court said in the last cited case: "The change in extent of service is a matter for the commission, and, after investigation, it can determine whether a portion of the line, unprofitable in itself, may, in the interest of the public, be abandoned or continued at a risk of loss of entire service, because of the drain on revenues by operation of the unproductive branch. . . . Notwithstanding the existence of contracts, evidenced by charters granted by the Commonwealth, or ordinances of municipalities, under some circumstances, the State, in the exercise of its police power, may alter the agreements, in the interest of the public, made by service corporations, and delegate to a commission the power to determine the rights of the respective parties, when the facts establish the necessity for so doing."

In Carlisle Borough *v.* Public Service Commission, 81 Pa. Superior Ct. 475, this precise question was before the Superior Court. The court said, in affirming the order of the Public Service Commission permitting a street passenger railway to abandon service over certain streets in the Borough of Carlisle: "The company may not abandon or discontinue such service, once entered upon, without the approval of the court or commission, as the case may be, to whom the Commonwealth has committed the determination of whether such action may be taken consistently with the public welfare. . . . But whether such withdrawal or abandonment is total or partial, the local authorities are not the abiters to decide the question as to its effect upon the public welfare."

If the condition of the contract-ordinance in question were that no more than a 5-cent fare should be charged between certain points, and an increased fare were allowed by the Public Service Commission, it would be beyond question the defendant's rights under the ordinance would remain unaffected. By parity of reasoning, the stipulation for a twenty-minute service on Water Street, as contained in the ordinance in question, must give way to the general policy of the law under which the legislature created a special tribunal to pass upon and determine questions relating to the reasonableness of service as well as rates. The stipulation in question deals directly and not indirectly with service. Hence, the Public Service Commission had jurisdiction and power to deal with the question. When the stipulation for twenty-minute service was inserted in the contract-ordinance, the parties must, therefore, be deemed to have so contracted subject to the power of the State, in the exercise of its police power, to provide for a different service, or to determine that the public welfare does not require any service at all.

But, inasmuch as the contract was binding on the defendant until touched by the State, we cannot see that defendant, in September, 1920, was warranted in disregarding its provisions entirely of its own motion. It is, of course, true that, in the absence of such stipulation in the ordinance, defend-

ant could lessen its service, and any and all parties aggrieved would have to go to the commission. But such is not the case when there is a contractual relation which is *prima facie* binding. "Consent by borough to occupation of highways by a street railway is required by the Constitution, and their conditions imposed as a prerequisite of entry become contractual obligations, which must be complied with, no matter how onerous, unless stricken down by some proper legislative exercise of the police power:" Collingdale Borough v. Philadelphia R. T. Co., 274 Pa. 124. The defendant should, therefore, pay the cost of suit.

*Order.*

Now, April 22, 1924, the prothonotary is directed to file the foregoing findings and to enter a decree *nisi* in accordance therewith, and to give notice to the parties or their counsel *sec. reg.*

And now, April 29, 1924, bill dismissed.

From F. H. Laird, Beaver, Pa.